THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ROBERT GILBERT,** | |
| **Plaintiff,** | |
| v. | Case No. 3:24-cv-01394-GCS |
| LATOYA HUGHES, ROBB JEFFREYS, ADEWALE KUFORIJI, GALLOWAY, HVERRE, RICHARD G. MORGANTHALER, MORRIS, RICHARD L. MILES, JR., SHANE A. TASKY, SIERRA TATE, DOUGLAS E. MASON, CHRISTENSEN, MYERS, COKE, JOHN DOE #1, P. ANDERSON, S. SMITH, D. CASEY, FRERKING, MS. CISQO, and MS. KAY LAWREY, | |
| **Defendants.** | |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff Robert Gilbert, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Shawnee Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while incarcerated at Big Muddy River Correctional Center.[1] In the Complaint, Gilbert alleges that his religious items were confiscated, he was issued false disciplinary tickets, and he

---

[1] The Court has jurisdiction to screen the Complaint due to Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 6), and the limited consent to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court, Wexford Health Sources, and the IDOC.

was denied proper health care. He asserts claims under the First, Eighth, and Fourteenth Amendments, as well as the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act ("RA"), 29 U.S.C. §§ 794–794e.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[2] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

## THE COMPLAINT

Gilbert alleges that the Defendants violated numerous federal rights during his incarceration at Big Muddy River Correctional Center ("Big Muddy") from January 1, 2022, through May 24, 2022. (Doc. 2, p. 9).

*Religious Interference*

On January 1, 2022, Gilbert arrived at Big Muddy and was housed in receiving until February 8, 2022. (Doc. 2, p. 10). Upon his release from receiving, he received his

---

[2]  Gilbert originally filed a Complaint regarding his claims at Big Muddy River Correctional Center in *Gilbert v. Jeffreys, et al.*, Case No. 22-cv-02669-RJD. In anticipation of defendants seeking summary judgment for Gilbert's failure to exhaust his administrative remedies prior to filing his lawsuit, Gilbert sought dismissal of his case. *See Gilbert*, Case No. 22-cv-02669-RJD, Doc. 88. He also submitted a new civil rights complaint and requested that a new case be opened. On May 23, 2024, Judge Daly dismissed Gilbert's claims in his pending case and the present case was opened with Gilbert's new civil rights Complaint. (Doc. 1).

prison property. But the property officer, Mr. Morris, refused to let Gilbert look at his property, and he threatened him into signing an inventory form. *Id*. Upon later inspection of his property, Gilbert determined that his religious necklace (a chain and medallion) was missing. *Id*. Gilbert, a practicing Baptist, viewed the necklace as a religious item. *Id*. at p. 11. He wrote a grievance about the missing chain and medallion and learned that IDOC changed the rules regarding chain widths, and Gilbert's necklace no longer met IDOC requirements. *Id*. at p. 10.

Gilbert also spoke to Wardens Galloway, Hverre, and Morganthaler about his missing chain (Doc. 2, p. 10). He explained to them that he possessed the chain at previous prisons and other inmates at Big Muddy were allowed to keep their chains. *Id*. The wardens denied his request to have the chain returned to him. *Id*. at p. 11. One of the wardens indicated Gilbert would have to change his religion because the prison lacked a Baptist chaplain. *Id*. at p. 11. Gilbert maintains that he acquired the chain prior to the rule change and should have been allowed to keep the chain at Big Muddy. *Id*. In May 2022, Warden Galloway sent Gilbert's religious chain to an address for Gilbert that was no longer valid. Galloway sent the chain despite Gilbert alerting him to the new address. *Id*. at p. 12. Thus, the chain was ultimately lost in the mail. Gilbert alleges that Galloway failed to provide Gilbert with due process prior to confiscating and mailing the chain.

*Mental Health Care and Hunger Strike*

In May 2022, Gilbert committed himself to suicide watch due to anxiety and depression. (Doc. 2, p. 11). He met with mental health professionals Ms. Cisqo and Ms. Jane Doe, but they failed to protect his rights. *Id*. Gilbert also declared a hunger strike and

again met with all three wardens. Warden Morganthaler informed Gilbert that he would leave Gilbert on the hunger strike even if it ultimately led to his death. *Id*. at p. 12. As a result, Gilbert suffered from headaches, dizziness, kidney pain, dehydration, weakness, weight loss, and loss of his throat muscles. *Id*. The mental health officials failed to intervene or protect Gilbert from the wardens' indifference. Gilbert alleges that the deterioration in his mental health stemmed from the confiscation of his religious chain. *Id*.

*ADA and/or RA Claim*

Gilbert also alleges that he suffers from depression and anxiety and qualifies for protection under both the ADA and RA. (Doc. 2, p. 13). As a result of his experiences at Big Muddy, his mental health deteriorated, and he was diagnosed with severe mental illness. *Id*.

*False Disciplinary Ticket #1*

Gilbert also alleges that he was issued a false ticket and placed in disciplinary segregation while at Big Muddy. (Doc. 2, p. 13). Officers Tate and Frerking issued a false disciplinary ticket related to his chain but failed to provide Gilbert with an individual incident report. *Id*. Officer Tate's report also named Officer Morris and Warden Galloway, indicating that the report was issued in retaliation. *Id*. at p. 14. Officer Miles served Gilbert with the report, but the report lacked the first page and Gilbert was unable to request witnesses, an investigation, or the assistance of staff. *Id*. Officer Myers and a John Doe officer heard the charge but failed to view video footage that would have exonerated Gilbert. *Id*. at p. 13. Officer Miles also attended the hearing which

Page **4** of **15**

demonstrated his bias; it also violated IDOC administrative rules. *Id*. at p. 14. Gilbert informed Officer Tasky, the co-chair hearing the ticket, of Miles's bias but Tasky failed to take action to remedy the bias.

Gilbert was found guilty of the offenses and placed in segregation. (Doc. 2, p. 14-15). The final report noted that Gilbert did not request witnesses, but Gilbert submitted handwritten requests for witnesses. *Id*. at p. 15. Gilbert also alleges he was unable to properly defend himself due to lack of proper notice by Officer Miles. Warden Morganthaler signed off on the disciplinary findings. *Id*.

*False Disciplinary Ticket #2*

Gilbert was issued a second disciplinary report after asking Officer Mason for a crisis team. (Doc. 2, p. 15). He was instead taken to segregation. Gilbert alleges that Officer Casey failed to provide a separate incident report but was listed as a witness to the original incident report. Gilbert further alleges that Officers Anderson and Smith failed to properly investigate the ticket. *Id*. at p. 15-16. Again, Officer Miles served the disciplinary report to Gilbert without the portion which allowed Gilbert to request witnesses. Thus, Gilbert was again unable to defend himself. *Id*. at p. 16. Warden Morganthaler signed off on the findings, which Gilbert alleges were falsified because he never pled guilty. *Id*. Gilbert wrote a grievance, but the appeal was denied by Adewale Kuforiji and Rob Jeffreys. *Id*. Gilbert alleges the two officials used the wrong standard in reviewing his grievance.

PRELIMINARY DISMISSALS

Gilbert identifies Defendants Christensen, Coke, and Kay Lawrey in the case caption but fails to include any allegations against them in his statement of claim. Thus, any claims against them are **DISMISSED without prejudice**. Gilbert also refers to Jane Doe #1, a mental health worker, in his statement of claim but fails to identify her in the case caption. Thus, Jane Doe #1 is also **DISMISSED without prejudice**. *See, e.g.*, *Myles v. United States*, 416 F.3d 551, 551-552 (7th Cir. 2005) (stating that to be considered a party, a defendant must be "specif[ied] . . . in the caption[.]").

Gilbert also refers to the Americans with Disabilities Act and Rehabilitation Act, arguing that his rights were violated. (Doc. 2, p. 13). He notes that he is mentally disabled due to depression and anxiety, but he fails to allege that any of the named defendants violated his rights. Nor has he alleged how his rights were violated. Thus, any claim under the ADA and/or RA is **DISMISSED without prejudice**.

To the extent that Gilbert alleges that his due process rights were violated when Warden Galloway confiscated Gilbert's religious medallion and shipped it out of the prison to an invalid address, Gilbert fails to state a claim. A plaintiff has no viable civil rights claim for deprivation of property if the state provides an adequate remedy. *See Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999). Here, Illinois provides a post-deprivation remedy in an action for damages in the Illinois Court of Claims. *See, e.g.*, *Murdock*, 193 F.3d at 513 (stating that "[a] prisoner has adequate process where an adequate post-deprivation remedy is available to redress unauthorized confiscation of property."); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993) (noting that state has

adequate post-deprivation remedy for destruction of prisoner's property). Thus, Gilbert's due process claim for his confiscated chain is **DISMISSED without prejudice**.

Finally, Gilbert mentions a possible retaliation claim, noting that Warden Galloway and Officer Morris were named in his first disciplinary report. (Doc. 2, p. 14). To adequately state a retaliation claim, a plaintiff must allege that he engaged in protected activity, "suffered a deprivation likely to deter such activity," and the "First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell,* 756 F.3d 983, 996 (7th Cir. 2014) (citations omitted). Although Gilbert alleges that the disciplinary report was written for retaliatory purposes, he fails to allege the First Amendment activity that he was participating in at the time the ticket was written, nor has he alleged that the protected activity was the motivating factor for the issuance of the ticket. Although he alleges the disciplinary charges stemmed from his confiscated chain, the charges appear to be for Gilbert's attempts to go to the personal property department to discuss his chain without a call pass (Doc. 2, p. 20). Gilbert also refused orders to lock up and demanded to go to the property department. *Id*. There is no indication that it was the practice of his religion that led to the issuance of the disciplinary charge. Thus, any retaliation claim is also **DISMISSED without prejudice**.

## DISCUSSION

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

> **Count 1:** **Galloway, Morganthaler, Hverre, and Morris interfered with Gilbert's religious exercise by confiscating his religious chain,**

|          | |
|----------|---|
|          | refusing to return it to him, and recommending he find a different religion, in violation of the First Amendment. |
| **Count 2:** | Galloway, Morganthaler, Hverre, and Morris interfered with Gilbert's religious exercise by confiscating his religious chain, refusing to return it to him, and recommending he find a different religion, in violation of RLUIPA. |
| **Count 3:** | Galloway, Morganthaler, Hverre, and Morris singled out Gilbert for discrimination based on his religion when they refused to return Gilbert's chain and intentionally mailed the item to the wrong address in violation of the Fourteenth Amendment Equal Protection Clause. |
| **Count 4:** | Eighth Amendment deliberate indifference claim against Galloway, Morganthaler, Hverre, and Ms. Cisqo for failing to intervene or provide care for Gilbert's hunger strike, depression, and anxiety. |
| **Count 5:** | Sierra Tate, Officer Frerking, Officer Myers, Officer John Doe, Officer Morris, Warden Galloway, Richard L. Miles, Shane A. Tasky, and Warden Morganthaler issued and found Gilbert guilty of a false disciplinary ticket in violation of Gilbert's Fourteenth Amendment Due Process Rights. |
| **Count 6:** | Douglas Mason, D. Casey, P. Anderson, S. Smith, Richard L. Miles, Sierra Tate, Warden Morganthaler, Adewale Kuforiji, and Rob Jeffreys issued and found Gilbert guilty of a false disciplinary ticket in violation of Gilbert's Fourteenth Amendment Due Process Rights. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered**

**dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[3]

**Counts 1 and 2**

Gilbert alleges that Wardens Galloway, Morganthaler, and Hverre, as well as Officer Morris, violated his First Amendment rights and RLUIPA when they refused Gilbert his religious chain and shipped it to the wrong address, resulting in the loss of the religious item. The First Amendment prohibits prison officials from imposing a substantial burden on the free exercise of religion unless the burden is reasonably related to a legitimate penological interest. *See Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013). At this stage, Gilbert adequately alleges that the wardens and property officer Morris burdened his practice of religion by denying him access to his religious chain and directing him to change his religion. Thus, Count 1 shall proceed against Galloway, Hverre, Morganthaler, and Officer Morris.

To the extent Gilbert also raises a religious claim pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the Act offers broader protections than the First Amendment. *See Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012). RLUIPA applies to state and local governments and to those acting under color of state law. *See* 42 U.S.C. § 2000cc-5(4). It offers broad protection to institutionalized persons by prohibiting substantial burdens on their religious exercise. *See* 42 U.S.C. § 2000cc-3(g).

---

[3]   *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

This protection extends to "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Although Gilbert also states a claim under RLUIPA, the relief available under RLUIPA is injunctive. *See Grayson*, 666 F.3d at 451. Nor does RLUIPA permit a cause of action against state employees; it permits relief only against "governmental bodies that receive funds and accept the conditions attached by the statute." *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011).

Gilbert is no longer housed at Big Muddy, and it is not clear to what extent his access to religious items is currently restricted at Shawnee. Thus, the Court will allow his RLUIPA claim in Count 2 to proceed at this time. The Court **ADDS** Latoya Hughes, in her official capacity as the director of IDOC, as the proper defendant for Gilbert's claim pursuant to RLUIPA. *See, e.g.*, *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (noting that proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out). To the extent Gilbert raises a claim against the defendants in their individual capacities, those claims are **DISMISSED**.

**Count 3**

Gilbert also argues that his rights under the Equal Protection Clause of the Fourteenth Amendment were violated when he was discriminated against based on his religion. To set forth a *prima facie* case of discrimination under the Equal Protection clause, Gilbert must establish that he "is a member of a protected class," that he "is otherwise similarly situated to members of the unprotected class," and that he "was treated differently from members of the unprotected class." *Brown v. Budz*, 398 F.3d 904, 916 (7th

Cir. 2005) (quoting *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir. 1993)). Gilbert alleges that he was treated differently from other inmates based on his religion. Although the allegations appear to be the same as raised by Gilbert in relation to his First Amendment religious claim, the Court will allow him to pursue relief under this alternative legal theory at this stage. Thus, Count 3 shall proceed against the wardens and Officer Morris.

**Count 4 – Mental Health Care**

Count 4 arises from Gilbert's hunger strike and his mental health needs during that strike. During the hunger strike, Gilbert alleges that he suffered from headaches, dizziness, kidney pain, dehydration, weakness, and weight loss. (Doc. 2, p. 12). He also suffered from severe depression and anxiety. Gilbert specifically alleges that Ms. Cisqo saw Gilbert but failed to provide him with any care. He alleges Warden Morganthaler specifically stated he would leave Gilbert on the hunger strike and Morganthaler indicated that he did not care if Gilbert died. That is enough at this stage to state a claim against Ms. Cisqo and Warden Morganthaler. To the extent that Gilbert alleges he was also visited by the other wardens, Gilbert fails to allege any actions by those individuals related to his care. Nothing suggests that Galloway or Hverre acted with deliberate indifference. Thus, Count 4 is **DISMISSED without prejudice** as to Galloway and Hverre.

**Counts 5 and 6**

To the extent Gilbert alleges that he was the subject of false disciplinary tickets, the receipt of a false disciplinary ticket does not amount to a due process violation. *See Hadley*

*v. Peters*, 841 F. Supp. 850, 856 (C.D. Ill. 1994), *aff'd*, 70 F.3d 117 (7th Cir. 1995) (citations omitted); *see also Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984). Gilbert also alleges that various defendants violated his Fourteenth Amendment due process rights when they issued two disciplinary tickets. He alleges that they failed to provide him adequate notice, refused his witnesses, and failed to properly review the evidence in finding him guilty of the tickets.

Due process safeguards that are associated with prison disciplinary hearings include: (1) advance written notice of the charges; (2) the opportunity to appear before an impartial hearing body to contest the charges; (3) the opportunity to call witnesses and present documentary evidence as a defense (if prison safety allows and subject to the discretion of correctional officers); and (4) a written statement summarizing the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-569 (1974). In addition, the decision of the adjustment committee must be supported by "some evidence." *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007).

Although the failure to provide Gilbert with notice, as well as his allegations regarding witnesses and evidence, could amount to due process violations, an inmate's liberty interests are protected by the Due Process Clause only insofar as a deprivation of the interest at issue would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The attached adjustment committee final report indicates that Gilbert only received 10 days in segregation for one of the tickets. (Doc. 1, p. 18). The short stay in segregation does not amount to an atypical and significant hardship. *See Sandin*, 515 U.S. at 484. *See*

*also Thomas v. Ramos*, 130 F.3d 754, 761-762 (7th Cir. 1997) (noting that two months not enough on its own); *Williams v. Brown*, No. 20-1858, 849 Fed. Appx. 154, 157 (7th Cir. Mar. 24, 2021) (noting that 30 days is not enough). Gilbert fails to state what punishment he received for the other disciplinary ticket. Without more, Gilbert fails to state a due process claim. Thus, Counts 5 and 6 are **DISMISSED without prejudice**.

## DISPOSITION

For the reasons stated above, Count 1 shall proceed against Galloway, Morganthaler, Hverre, and Officer Morris. Count 2 shall proceed against Latoya Hughes in her official capacity only. Count 3 shall proceed against Galloway, Morganthaler, Hverre, and Morris. Count 4 shall proceed against Morganthaler and Ms. Cisqo, but it is **DISMISSED without prejudice** as to Galloway and Hverre. Counts 5 and 6 are **DISMISSED without prejudice**. Finally, Defendants Rob Jeffreys, Adewale Kuforiji, Richard L. Miles Jr., Shane A. Tasky, Sierra Tate, Douglas E. Mason, Christensen, Myers, Coke, John Doe #1, P. Anderson, S. Smith, D. Casey, Frerking, Jane Doe #1, and Kay Lawrey are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendants Warden Galloway, Warden Hverre, Warden Morganthaler, Officer Morris, Ms. Cisqo, and Latoya Hughes (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Gilbert. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the

date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Gilbert, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Gilbert, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Gilbert is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply

with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

**IT IS SO ORDERED.**

**DATED: July 15, 2024.**

Digitally signed by Judge Sison
Date: 2024.07.15 12:33:24 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**