UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT GILBERT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:24-cv-01394-GCS |
| | ) |
| LATOYA HUGHES, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff Robert Gilbert ("Gilbert"), an inmate of the Illinois Department of Corrections ("IDOC"),[1] brings this civil rights action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq.*, related to confiscation of a religious item and denial of proper health care while incarcerated at Big Muddy Correctional Center ("Big Muddy"). (Doc. 2). Pending before the Court is a Motion for Partial Summary Judgment on the Issue of Exhaustion of Administrative Remedies by Latoya Hughes, Darren Galloway, Richard Morganthaler, Kimberly Hvarre, and Andrew Morris (collectively, "IDOC Defendants"). (Doc. 48). For the reasons delineated below, Defendants' Motion for Partial Summary Judgment is **GRANTED**.

---

[1] Gilbert is currently incarcerated at Pinckneyville Correctional Center.

## PROCEDURAL BACKGROUND

Gilbert filed his Complaint on May 28, 2024. (Doc. 2). In it, he alleged the following facts relevant to the pending motion:

On January 1, 2022, Gilbert arrived at Big Muddy. (Doc. 2, p. 10). Upon his release from receiving on February 8, 2022, Gilbert realized that his religious chain/medallion was missing from his returned property. *Id.* He wrote a grievance about the missing chain and learned that it exceeded the IDOC's new rules regarding chain width. *Id.* Gilbert also spoke to Wardens Galloway, Hverre, and Morganthaler about his missing chain. *Id.* He explained to them that he possessed the chain at previous prisons, and other inmates at Big Muddy were allowed to keep their chains. *Id.* The wardens refused to return his chain. *Id.* at p. 11.

In May 2022, the chain was lost in the mail after Warden Galloway sent it to an address for Gilbert that was no longer valid, despite Gilbert alerting him to his new address. (Doc. 2, p. 11). Warden Galloway failed to provide Gilbert with due process prior to confiscating and mailing the chain. *Id.*

Gilbert's mental health deteriorated after the confiscation of his religious chain. (Doc. 2, p. 12). In May 2022, he committed himself to suicide watch due to anxiety and depression and went on a hunger strike for eight days. *Id.* As a result of his hunger strike, Gilbert experienced headaches, dizziness, kidney pain, dehydration, weakness, weight loss, and loss of his throat muscles. *Id.* He met with Wardens Morganthaler, Hverre, and Galloway while on hunger strike. *Id.* Warden Morganthaler told Gilbert, "I'm leaving you on hunger strike[.] I don't care if you die." *Id.*

On July 15, 2024, the Court completed a preliminary review of Gilbert's Initial Complaint pursuant to 28 U.S.C. § 1915A. (Doc. 12). Based on the above allegations, the Court allowed Gilbert to proceed on the following claims:

**Count 1:** **Galloway, Morganthaler, Hverre, and Morris interfered with Gilbert's religious exercise by confiscating his religious chain, refusing to return it to him, and recommending he find a different religion, in violation of the First Amendment.**

**Count 2:** **Latoya Hughes, in her official capacity, for interfering with Gilbert's religious exercise by confiscating his religious chain, refusing to return it to him, and recommending he find a different religion, in violation of RLUIPA.**

**Count 3:** **Galloway, Morganthaler, Hverre, and Morris singled out Gilbert for discrimination based on his religion when they refused to return Gilbert's chain and intentionally mailed the item to the wrong address in violation of the Fourteenth Amendment Equal Protection Clause.**

**Count 4:** **Eighth Amendment deliberate indifference claim against Morganthaler and Ms. Cisco for failing to intervene or provide care for Gilbert's hunger strike, depression, and anxiety.**

(Doc. 12, p. 8, 13).

On January 13, 2025, the IDOC Defendants filed a Partial Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies. (Doc. 48). Defendants seek to dismiss Count 3 and 4 of the Complaint. *Id.* Gilbert filed a Response in Opposition on March 18, 2025, and supplemented his response on July 28, 2025. (Doc. 55, 77). Accordingly, the issue of exhaustion is now ripe for the Court's review.[2]

---

[2] Based on the Court's review, the supplement (Doc. 77) filed by Gilbert on July 28, 2025, pertains to the Motion for Summary Judgment filed by Defendant Sheila Cisco (Doc. 80), which

**FACTUAL BACKGROUND**

The IDOC Defendants have limited their discussion of Gilbert's grievance record to four grievances and two subsequent appeals of one grievance to the Administrative Review Board ("ARB"). (Doc. 48, p. 4). The Court's discussion is therefore limited to the grievances identified by Defendants as relevant to Counts 3 and 4. *Id.*

**A.     Grievance No. 81-2-22**

Gilbert submitted Grievance No. 81-2-22 to the Counselor at Big Muddy on February 4, 2022, marking it as an emergency. (Doc. 48-4, p. 130). Gilbert complained that his gold chain was taken away when he was transferred to Big Muddy in January 2022. *Id.* Gilbert stated that, when he asked, "why internal affairs [would] have [his] chain, C/O Morris could not answer." *Id.*

On February 9, 2022, the Chief Administrative Officer ("CAO") determined that the grievance was not an emergency and returned it to Gilbert for resubmission. (Doc. 48-4, p. 130). Gilbert sent the grievance directly to the ARB, who received it on February 24, 2022. *Id.* On March 18, 2022, the ARB returned the grievance to Gilbert without reviewing it on the merits because he did not follow the proper procedure to first obtain a review from the facility. *Id.* at p. 129.

---

is still pending before the Court. It does not affect the analysis and disposition of the instant motion.

B.     **Grievance No. 125-2-22**

Gilbert filed emergency Grievance No. 125-2-22 on February 8, 2022. (Doc. 48-4, p. 118). He grieved about not receiving his chain and charm along with his other personal property upon intake at Big Muddy, and he specifically identified C/O Morris. *Id.*[3]

On February 14, 2022, the CAO determined that the grievance was not an emergency and returned it to Gilbert for resubmission. (Doc. 48-4, p. 118). Gilbert resubmitted the grievance. *Id.* The grievance counselor responded on February 17, 2022, stating that the chain would not be returned as there was no verification as to its value as required by IDOC rules and because its thickness exceeded the permissible parameters. *Id.* The grievance officer responded to the grievance on March 3, 2022, recommending that it be denied because it did not comply with the requirements to obtain a jewelry permit. *Id.* at p. 126. The CAO concurred. *Id.* Gilbert appealed the grievance to the ARB on March 6, 2022. *Id.* On April 7, 2022, the ARB denied the grievance because the issue was appropriately addressed by the facility. *Id.* at p. 125.

On April 25, 2022, Gilbert sent another grievance to the ARB complaining about the ARB's response to Grievance No. 125-2-22, alleging staff misconduct for denying him a formal hearing. (Doc. 48-4, p. 103). On May 3, 2022, the ARB denied the grievance. *Id.*

---

[3] The grievance also contains several allegations related to Gilbert's incarceration at Graham, namely, that he was on suicide watch twice, was harassed by C/O Lowe, and had "repeatedly sent" his chain out and had it "sent back" to him while there. *Id.* It appears that Gilbert believes Defendants retaliated against him for "snitching" on C/O Lowe by confiscating his chain. (Doc. 48-4, p. 84). However, there is no retaliation claim in this case, so these allegations are irrelevant.

at p. 102. The ARB explained that the response to the grievance was appropriate and that the claims of staff misconduct were unsubstantiated. *Id.*

On May 19, 2022, Gilbert sent another grievance directly to the ARB complaining about the ARB's response to Grievance No. 125-2-22. (Doc. 48-4, p. 83). The ARB returned the grievance on June 23, 2022, explaining that the issue was previously addressed in its decision on May 3, 2022. *Id.* at p. 82.

C.     **Grievance No. 214-2-22**

On February 20, 2022, Gilbert submitted emergency Grievance No. 214-2-22 to the counselor at Big Muddy. (Doc. 48-4, p. 127). Gilbert complained that C/O Morris denied his request for the chain. *Id.* at p. 128.

The CAO determined that the grievance was not an emergency and returned it to Gilbert for resubmission on February 22, 2022. (Doc. 48-4, p. 127). Gilbert sent the grievance directly to the ARB on February 28, 2022. *Id.* at p. 126. On March 18, 2022, the ARB returned the grievance without reviewing it on the merits because Gilbert did not follow the proper procedure to first obtain a review from the facility. *Id.*

D.     **Grievance No. 80-4-22**

Gilbert filed emergency Grievance No. 80-4-22 on April 8, 2022. (Doc. 48-4, p. 68). He grieved about being deprived of his chain due to Big Muddy's new policy regarding the permitted size of chains. *Id.* He identified Morgenthaler, Galloway, Hvarre, and Morris among those responsible for not allowing him to have his chain. *Id.*

On April 12, 2022, the CAO determined that the grievance was not an emergency and returned it to Gilbert for resubmission. (Doc. 48-4, p. 68). Gilbert resubmitted

Grievance #80-4-22 to the counselor, who responded on April 20, 2022. *Id.* The counselor stated that the chain was not permitted at Big Muddy because it had been denied by Gilbert's previous institution, Graham Correctional Center ("Graham"), but that Gilbert was welcome to reorder jewelry that complied with the new guidelines. *Id.*

The grievance officer responded to the grievance on April 27, 2022, reiterating that Gilbert was not allowed to possess his chain because it exceeded the permitted size, but that Gilbert may obtain a new religious medallion and chain that complied with the guidelines. (Doc. 48-4, p. 67). The CAO concurred on May 2, 2022, and Gilbert appealed the grievance to the ARB the following day. *Id.* at p. 67-74. On July 15, 2022, the ARB denied the grievance, finding the issue was appropriately addressed by the facility. *Id.* at p. 66.

## LEGAL STANDARDS

Summary judgment is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). To survive a motion for summary judgement, the non-moving party must provide admissible evidence which would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, the Court's role is to determine whether a genuine issue of material fact exists rather than evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter when determining the outcome for a motion for summary judgement. *See National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

However, in *Pavey v. Conley*, the Seventh Circuit held that, "debatable factual

issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, it is left to the Court to determine whether an inmate has exhausted his or her remedies when the affirmative defense of non-exhaustion is raised. If the court finds that the inmate failed to exhaust administrative remedies, then the inmate is given the opportunity to exhaust should time still permit or if the failure to exhaust was innocent. *Id* at 742. If the court determines that the failure to exhaust was the inmate's fault, then the case is over. *Id*.

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This coincides with the PLRA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). It affords prison administrators an opportunity to fix the problem, reduce damages, and shed light on the factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

Inmates must follow their prison's administrative rules when attempting to exhaust their administrative remedies under the PLRA. *See Pozo*, 286 F.3d at 1023. Gilbert is an inmate in the IDOC and is required to correctly follow the regulations contained in

the IDOC's Grievance Procedures to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq.* The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the requirements for exhaustion under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The exhaustion requirement cannot be satisfied if an inmate files untimely or procedurally defective grievances. *See Woodford*, 548 U.S. at 83. Additionally, an inmate must correctly complete all the steps outlined in the grievance procedures and is barred from filing suit prior to any step being completed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004); 42 U.S.C. § 1997e(a). If an inmate fails to complete all the steps correctly to exhaust his claim, then "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. However, inmates are not required to exhaust administrative remedies that are unavailable to them which can occur if, "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

The IDOC Grievance Procedures require that an inmate first file a grievance with a counselor at their correctional institution within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The Grievance must include, "factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *See* 20 ILL. ADMIN. CODE § 504.810(c). If the inmate is unsatisfied with the counselor's response, then the inmate can submit a formal grievance to the prison's grievance officer. *Id* at (a)-(b). The grievance officer must then review the grievance and

provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within 60 days of the receipt of the grievance, the grievance officer must report their findings and recommendations in writing to the CAO. *See* 20 ILL. ADMIN. CODE § 504.830(e). The CAO will then review the findings and recommendations and offer a written decision to the inmate. *Id*. The inmate can appeal the CAO's decision to the ARB within 30 days. *See* 20 ILL. ADMIN. CODE § 504.850(a). To do this correctly, the inmate is required to attach copies of the grievance officers report and the CAO's decision to his appeal. *Id*. The ARB then submits its findings and recommendations to the Director who will issue the IDOC's final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)-(e).

## DISCUSSION

Defendants move for partial summary judgment on Counts 3 and 4 because Gilbert failed to exhaust his administrative remedies prior to filing his Complaint. (Doc. 48).[4] Specifically, Defendants contend that Gilbert failed to raise in his grievances that Defendants Galloway, Morganthaler, Hverre, and Morris singled him out by refusing to return his chain and intentionally mailing it to the wrong address and that Defendant Morganthaler failed to provide care during his hunger strike in May 2022. *Id.* at p. 7-10.

In response, Gilbert argues that Defendants prevented his attempts to exhaust because the ARB did not respond to his grievances or otherwise explain proper exhaustion procedures. (Doc. 57, p. 1). Under the PLRA, "an inmate is required to exhaust

---

[4] Defendants admit that Gilbert exhausted his administrative remedies as to Counts 1 and 2 of his Complaint. (Doc. 48, p. 11).

those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). *See also Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008); *Dole*, 438 F.3d at 809.[5] To support his claim that the grievance process was unavailable to him, Gilbert attached a grievance which was not identified in Defendants' Motion for Partial Summary Judgment. (Doc. 57, p. 2-4). That grievance, however, fails to show that the grievance process was unavailable to Gilbert. First, the grievance is not related to the two claims at issue in the IDOC Defendants' motion, *i.e.*, that Defendants Galloway, Morganthaler, Hverre, and Morris singled Gilbert out when refusing to return and intentionally mailing his religious chain to the wrong address and that Defendant Morganthaler failed to provide care during his hunger strike in May 2022. Instead, Gilbert's grievance appears solely related to his deliberate indifference claim against Defendant Cisco in Count 4. (Doc. 57, p. 3-4). Whether Gilbert exhausted his claims against Defendant Cisco is not relevant to the instant motion filed by the IDOC Defendants. And, even if the grievance in Gilbert's response was relevant, he filed the grievance on January 1, 2025, months after the filing of his Complaint on May 28, 2024. (Doc. 2). Gilbert cannot sue first and exhaust later. *See Chambers v. Sood*, 956 F.3d 979, 984

---

[5] *Ross* outlines three scenarios where an administrative process is considered "unavailable": first, when the process "operates as a simple dead end," such that "officers [are] unable or consistently unwilling to provide any relief to aggrieved inmates"; second, when the process is "so opaque that it becomes, practically speaking, incapable of use"; and third, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–644. *See also Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018) (explaining that these scenarios are "not a closed list[.]").

(7th Cir. 2020). Accordingly, the grievance attached to Gilbert's response does not rebut Defendants' motion because it is irrelevant and not properly exhausted.

Gilbert has not shown how the grievance process was otherwise unavailable to him. Gilbert's grievance record shows that he successfully filed and exhausted multiple grievances related to the confiscation of his religious chain shortly after his January 2022 transfer to Big Muddy. In Grievance No. 214-2-22, filed on February 20, 2022, Gilbert grieved that his religious chain was confiscated when he was transferred to Big Muddy in January 2022. (Doc. 48-4, p. 127-128). He complained stating that "C/O Morris will come to receiving and get the address and money voucher for postage to send my chain out" and that he was "concerned that my chain wi[ll] get damaged or come up missing." *Id.* at p. 127. Similarly, in Grievance No. 81-2-22, Gilbert complained that C/O Morris would not return his chain and other property to him upon his admittance to Big Muddy. *Id.* at p. 130-131. For relief, Gilbert stated he wished that his chain be returned "or sent out before it gets lost or damaged." *Id.* at p. 130. However, both grievances were returned to Gilbert by the ARB without a merits review because he failed to follow the proper procedure to obtain a review before submitting it to the ARB. *Id.* at p. 126, 129. Gilbert does not contest that he failed to exhaust these grievances.

On the other hand, Gilbert fully exhausted Grievance Nos. 125-2-22 and 80-4-22. Defendants admit this. (Doc. 48, p. 11). Nevertheless, Defendants argue that these exhausted grievances fail to contain any reference to Gilbert's claims in Counts 3 and 4. The Court agrees.

First, given the timeline of events, it would have been impossible for Gilbert to

grieve the claims in Counts 3 and 4 in Grievances Nos. 125-2-22 and 80-4-22. Gilbert filed Grievance No. 125-2-22 on February 8, 2022, and Grievance No. 80-4-22 on April 8, 2022. (Doc. 48-4, p. 68, 118). However, in his Complaint, Gilbert alleges that Defendants mailed his chain to the wrong address, and he went on hunger strike and suicide watch in May 2022. (Doc. 2, p. 12). Obviously, Gilbert could not have complained of events from May 2022 in grievances filed months prior. In fact, the only potential grievance identified by Defendants in which Gilbert *could* have raised the events of May 2022— the second subsequent appeal of Grievance No. 125-2-22—he did not. (Doc. 48-4, p. 83). As explained below, the second subsequent appeal to Grievance No. 125-2-22 filed on May 19, 2022, did not grieve any conduct by Defendants related to Counts 3 and 4.

The contents of Grievances Nos. 125-2-22 and 80-4-22 similarly support Defendants' contention that Gilbert failed to exhaust his administrative remedies because they fail to contain any descriptions that would provide notice of the alleged misconduct in Counts 3 and 4. An inmate must provide enough information to serve the grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaint." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). The Illinois Administrative Code requires that an inmate's grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c).

In Grievance No. 125-2-22, Gilbert complained about the administrative rules regarding chains and that his chain was "not mailed out as of 2-8-2022 and is in the Big

Muddy's Institution pending the outcome of the instant grievance." (Doc. 48-4, p. 119). Nowhere in Grievance No. 125-2-22 did Gilbert state that Defendants singled him out for discrimination by intentionally mailing his chain to the wrong address or were deliberately indifferent to his serious medical needs while he was on hunger strike. Neither do Gilbert's two subsequent appeals of Grievance No. 125-2-22 concern the events underlying Counts 3 and 4. (Doc. 48-4, p. 82-83, 102-103). Similarly, in Grievance No. 80-4-22, Gilbert complained about being deprived of his chain due to Big Muddy's new policy regarding the permitted size of chains. (Doc. 48-4, p. 68-69). He identified Morgenthaler, Galloway, Hvarre, and Morris among those responsible for not allowing him to have his chain. *Id.* Once again, however, there is nothing in this grievance that would provide notice to prison officials of the alleged misconduct in Counts 3 and 4. Although Gilbert exhausted Grievances Nos. 125-2-22 and 80-4-22, he did not complain that he was singled out by Defendants when they mailed his chain to the wrong address or that they were deliberately indifferent to him during his hunger strike. Thus, Gilbert did not exhaust Counts 3 and 4 in these grievances.

What's more, Gilbert does not dispute the relevant grievances identified by Defendants or otherwise allege he filed any other grievances containing allegations related to Counts 3 and 4. An evidentiary hearing is not necessary under these circumstances, where there can be no reasonable dispute that Gilbert failed to exhaust his administrative remedies. *See, e.g.*, *Doss v. Gilkey*, 649 F.Supp.2d 905, 912 (S.D. Ill. 2009) (explaining that a hearing is not required where "there are no disputed facts regarding

exhaustion, only a legal question.").[6] Accordingly, the entirety of Counts 3 and 4 as to Defendant Morganthaler are dismissed without prejudice for failure to exhaust administrative remedies. *C.f. Chambers*, 956 F.3d at 984 (stating that "[a] premature lawsuit must be dismissed without prejudice, and the prisoner must file a new suit after fully exhausting administrative remedies.").

## CONCLUSION

For the reasons outlined above, Defendant's Motion for Partial Summary Judgment is **GRANTED**. (Doc. 48). Count 3 is **DISMISSED** in its entirety. Count 4 is **DISMISSED** as to Defendant Morganthaler.

**IT IS SO ORDERED.**

**DATED: September 22, 2025.**

Digitally signed by Judge Sison
Date: 2025.09.22 12:17:28 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

---

[6] The Supreme Court recently altered the Court's ability to conduct evidentiary hearings under *Pavey*. In *Perttu v. Richards*, 145 S.Ct. 1793 (2025), the Supreme Court held that if a factual dispute on exhaustion is intertwined with a factual dispute that goes to the merits of a plaintiff's underlying substantive claim, a jury trial is required on the intertwined issue. No such intertwinement issues are implicated here. Thus, *Perttu* does not affect this dismissal.