UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ROBERT GILBERT,                          )
                                         )
Plaintiff,                               )
                                         )
vs.                                      )    Case No. 3:24-cv-01394-GCS
                                         )
LATOYA HUGHES, et al.,                   )
                                         )
Defendants.                              )
                                         )

MEMORANDUM & ORDER

SISON, Magistrate Judge:

Plaintiff Robert Gilbert, an inmate of the Illinois Department of Corrections ("IDOC"), brings this civil rights action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq.*, related to confiscation of a religious item and denial of proper health care while incarcerated at Big Muddy Correctional Center ("Big Muddy").[1] (Doc. 2). Pending before the Court is a Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies by Sheila Cisco. (Doc. 80). For the reasons delineated below, Defendant's Motion for Summary Judgment is **GRANTED**.

PROCEDURAL BACKGROUND

Plaintiff filed his Complaint on May 28, 2024. (Doc. 2). Plaintiff alleged on January

---

[1]     Plaintiff is currently incarcerated at Pinckneyville Correctional Center.

Page **1** of **12**

1, 2022, Plaintiff arrived at Big Muddy. (Doc. 2, p. 10). Upon his release from receiving on February 8, 2022, Plaintiff realized that his religious chain/medallion was missing from his returned property. *Id.* He wrote a grievance about the missing chain and learned it exceeded the IDOC's new rules regarding chain width. *Id.* Plaintiff also spoke to Wardens Galloway, Hverre, and Morganthaler about his missing chain. *Id.* He explained to them he possessed the chain at previous prisons, and other inmates at Big Muddy were allowed to keep their chains. *Id.* The wardens refused to return his chain. *Id.* at p. 11.

Plaintiff's mental health deteriorated after the confiscation of his religious chain. (Doc. 2, p. 12). In May 2022, he committed himself to suicide watch due to anxiety and depression and went on a hunger strike for eight days. *Id.* As a result, he experienced headaches, dizziness, kidney pain, dehydration, weakness, weight loss, and loss of his throat muscles. *Id.* Gilbert alleges Defendant Cisco saw him while he was on suicide watch in May; Plaintiff's mental health records indicate Defendant Cisco was first involved in Plaintiff's mental health treatment on April 12, 2022, when she signed off on a mental health treatment plan prepared by another provider. (Doc. 81-6, p. 85).

On July 15, 2024, the Court completed a preliminary review of Plaintiff's Initial Complaint pursuant to 28 U.S.C. § 1915A. (Doc. 12). Based on the above allegations, the Court allowed Plaintiff to proceed with the following claim against Defendant Cisco:

> **Count 4:** **Eighth Amendment deliberate indifference claim against Morganthaler and Ms. Cisco for failing to intervene or provide care for Gilbert's hunger strike, depression, and anxiety.**

(Doc. 12, p. 8, 13).

On August 11, 2025, Defendant Cisco filed a Motion for Summary Judgment and Supporting Memorandum on the issue of exhaustion of administrative remedies. (Doc. 80, 81). Plaintiff filed a response on August 19, 2025, and a supplement to his response on August 25, 2025. (Doc. 84, 86). Defendant Cisco replied on September 2, 2025. (Doc. 87). Accordingly, the issue of exhaustion is now ripe for the Court's review.

### FACTUAL BACKGROUND

The following grievances are relevant to Plaintiff's exhaustion of administrative remedies as to Defendant Cisco. Because the parties do not dispute that Defendant Cisco was not involved in treating Plaintiff until at least April 2022 and the only allegation against Defendant Cisco involves his mental health treatment, the Court will limit its discussion to grievances filed on or after February 20, 2022.

### A.    Grievance No. 214-2-22

Plaintiff filed emergency grievance No. 214-2-22 on February 20, 2022. (Doc. 81-1, p. 168). He grieved staff's refusal to give him his chain and their failure to protect him. The grievance names two correctional officers and refers to going to see "the MHP" to tell them about blackouts that he experiences. *Id.* Plaintiff also states he will have no choice but to go on hunger strike if he does not receive his chain. *Id.*

On February 22, 2022, the Chief Administrative Officer ("CAO") determined that the grievance was not an emergency and returned it to Plaintiff for resubmission. *Id.* The Administrative Review Board ("ARB") responded to this grievance on March 18, 2022, noting that personal property and medical issues must be reviewed at an inmate's current facility prior to ARB review. *Id.* at p. 170.

**B.      Grievance No. 80-4-22**

Plaintiff filed emergency Grievance No. 80-4-22 on April 8, 2022. (Doc. 48-4, p. 68). He grieved about being deprived of his chain due to Big Muddy's new policy regarding the permitted size of chains. *Id.* He identified several people as among those responsible for not allowing him to have his chain. *Id.*

On April 12, 2022, the CAO determined the grievance was not an emergency and returned it to Plaintiff for resubmission. (Doc. 81-1, p. 109). Plaintiff resubmitted Grievance #80-4-22 to the Counselor, who responded on April 21, 2022. *Id.* The Counselor stated the chain was not permitted at Big Muddy because it had been denied by Plaintiff's previous institution, Graham Correctional Center ("Graham"), but Plaintiff was welcome to reorder jewelry that complied with the new guidelines. *Id.*

A Grievance Officer responded to the grievance on April 27, 2022, reiterating that Plaintiff was not allowed to possess his chain because it exceeded the permitted size, but Plaintiff could obtain a new religious medallion and chain that complied with the guidelines. *Id.* at p. 108. The CAO concurred on May 2, 2022, and Plaintiff appealed the grievance to the ARB the following day. *Id.* On July 15, 2022, the ARB denied the grievance, finding the issue was appropriately addressed by the facility. *Id.* at p. 107.

**C.      Grievance No. 13-5-22**

Plaintiff filed this grievance on April 15, 2022. (Doc. 81-1, p. 127). The grievance concerns an allegedly false disciplinary report filed in retaliation for Plaintiff filing a harassment complaint against a correctional officer at Graham. The grievance names several correctional officers. *Id.* at p. 127-128. It also alleges the confiscation of Plaintiff's

religious chain was a part of the retaliation. *Id*. Plaintiff requested a transfer from Big Muddy for his own safety. *Id*. A Grievance Counselor responded to the grievance on May 3, 2022. *Id*. at p. 127. He noted the grievance was duplicative of two prior grievances, and the named correctional officers denied harassing Plaintiff. *Id*. Plaintiff appears to have mailed this grievance to the ARB upon receiving a response from the Grievance Counselor. *Id.* The ARB did not review the grievance because it was not submitted within the required timeframe. *Id.* at p. 126. The ARB also noted that, by the time of its response, Plaintiff had been transferred from Big Muddy, and thus he had already obtained the remedy he requested. *Id*.

### D.      Grievance Dated April 25, 2022

On April 25, 2022, Plaintiff filed an unnumbered grievance against a member of the ARB. (Doc. 81-1, p. 144). The grievance alleges the ARB member inappropriately denied one of Plaintiff's prior grievances regarding the confiscation of his chain.[2] *Id.* The ARB denied this grievance because the response to the prior grievance was appropriate. *Id.*

### E.      Grievance Dated May 19, 2022

On May 19, 2022, Plaintiff filed an unnumbered grievance to complain about the ARB's response to his prior unnumbered grievance. (Doc. 81-1, p. 124). The grievance alleges harassment by correctional officers and wardens in relation to Plaintiff's chain.

---

[2]      Grievance No. 125-2-22 is not discussed in this Memorandum and Order.

The ARB responded to this grievance on June 23, 2022, noting it had addressed the underlying grievance already and would not address the matter again. *Id.* at p. 123.

**LEGAL STANDARDS**

Summary judgment is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). To survive a motion for summary judgment, the non-moving party must provide admissible evidence which would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, the Court's role is to determine whether a genuine issue of material fact exists rather than evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter when determining the outcome for a motion for summary judgment. *See National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

However, in *Pavey v. Conley*, the Seventh Circuit held that, "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, it is left to the Court to determine whether an inmate has exhausted his or her remedies when the affirmative defense of non-exhaustion is raised. If the court finds the inmate failed to exhaust administrative remedies, then the inmate is given the opportunity to exhaust should time still permit or if the failure to exhaust was innocent. *Id* at 742. If the court determines that the failure to exhaust was the inmate's fault, then the case is over. *Id.*

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed

by inmates, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This coincides with the PLRA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). It affords prison administrators an opportunity to fix the problem, reduce damages, and shed light on the factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

Inmates must follow their prison's administrative rules when attempting to exhaust their administrative remedies under the PLRA. *See Pozo*, 286 F.3d at 1023. Plaintiff is an inmate in the IDOC and is required to correctly follow the regulations contained in the IDOC's Grievance Procedures to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq.* The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the requirements for exhaustion under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The exhaustion requirement cannot be satisfied if an inmate files untimely or procedurally defective grievances. *See Woodford*, 548 U.S. at 83. Additionally, an inmate must correctly complete all the steps outlined in the grievance procedures and is barred from filing suit prior to any step being completed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004); 42 U.S.C. § 1997e(a). If an inmate fails to complete all the steps correctly to exhaust his claim, then "the prison administrative

authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. However, inmates are not required to exhaust administrative remedies that are unavailable to them which can occur if, "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

The IDOC Grievance Procedures require that an inmate first file a grievance with a counselor at their correctional institution within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The Grievance must include, "factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *See* 20 ILL. ADMIN. CODE § 504.810(c). If the inmate is unsatisfied with the counselor's response, then the inmate can submit a formal grievance to the prison's grievance officer. *Id.* at (a)-(b). The grievance officer must then review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within 60 days of the receipt of the grievance, the grievance officer must report their findings and recommendations in writing to the CAO. *See* 20 ILL. ADMIN. CODE § 504.830(e). The CAO will then review the findings and recommendations and offer a written decision to the inmate. *Id.* The inmate can appeal the CAO's decision to the ARB within 30 days. *See* 20 ILL. ADMIN. CODE § 504.850(a). To do this correctly, the inmate is required to attach copies of the grievance officers report and the CAO's decision to his appeal. *Id.* The ARB then submits its findings and recommendations to the Director who will issue the IDOC's final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)-(e).

**DISCUSSION**

Plaintiff has not exhausted his administrative remedies against Defendant Cisco. None of the grievances identified by the parties or reviewed by the Court could have put Big Muddy officials on notice of any misconduct by Defendant Cisco. Emergency Grievance No. 214-2-22 alleged that staff at Big Muddy was not protecting him and failed to intervene on his behalf. However, he did not mention mental health staff by name or in general; even if he had, Defendant Cisco was not involved in Plaintiff's treatment until April 2022, and Plaintiff alleged that the misconduct giving rise to his claim against her occurred in May 2022. (Doc. 81-6, p. 85; Doc. 12, p. 3-4). A grievance filed weeks or months before those dates cannot have put Big Muddy officials on notice about potential problems with Nurse Cisco – no alleged misconduct could have occurred when the grievance was filed. Furthermore, Grievance No. 214-2-22 was not fully exhausted, so it could not exhaust Plaintiff's administrative remedies against Defendant Cisco. Plaintiff's other grievances were either not fully exhausted due to procedural deficiencies, did not allege anything related to mental healthcare, or both.

Plaintiff makes several arguments to show he could not exhaust his administrative remedies against Defendant Cisco. They do not persuade the Court. First, Plaintiff argues his remedies were unavailable because it is impossible for an inmate to file a grievance about a medical incident at one facility after being transferred to a different facility. (Doc. 84, p. 2). This is not the case. Plaintiff relies on the instructions on the grievance form that instruct the filer to mail the grievance to the ARB when, *inter alia*,

the grievance involves "issues from another facility except medical and personal property issues. (Doc. 84, p. 20). The plain language of the form indicates that grievances from another facility involving medical and personal property issues should first be filed at an inmate's current facility rather than being sent directly to the ARB. *See, e.g.*, *Hoskins v. Bartolotti*, Case No. 3:21-cv-00664-GCS, 2024 WL 278344, *9 (S.D. Ill. Jan. 25, 2024) (noting testimony from IDOC grievance counselor that an inmate's current facility can address medical and personal property issues that occurred at a prior facility). Further, the instructions on the grievance are not so confusing as to render exhaustion unavailable. *See, e.g.*, *Wallace v. Baldwin*, 55 F.4th 535, 542 (7th Cir. 2022) (stating that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of'") (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)). Plaintiff may have misunderstood the grievance process; even if he did, that does not mean the grievance process was unavailable to him. *See King v. Dart*, 63 F.4th 602, 606 (7th Cir. 2023).

Second, Plaintiff argues the doctrine of continuing injury means he was not required to file a grievance as to each instance of misconduct. (Doc. 84, p. 5-6). It is true that an inmate does not need to file a new grievance for every instance of repeated conduct, but Plaintiff did not file any grievance that could have put prison officials on notice as to any of Defendant Cisco's alleged misconduct. The doctrine of continuing injury does not apply here.

Third, Plaintiff argues he has exhausted his administrative remedies against Defendant Cisco because he exhausted some grievances on the merits. (Doc. 86, p. 2). But that is not what was required of Plaintiff. To exhaust administrative remedies, the allegations contained in a grievance must support the claim he is pursuing in the case. *See King*, 63 F.4th at 608. No allegations in the grievances in this case, let alone allegations in a grievance that was fully exhausted, did so.

Plaintiff's reliance on *Maddox v. Love*, 655 F.3d 709 (7th Cir. 2011) is misplaced for similar reasons. (Doc. 86, p. 6). In *Love*, the court found that defendants could not review a grievance on the merits but then rely on a technical defect to argue that a plaintiff had not exhausted his administrative remedies because the grievance had provided prison officials with a fair opportunity to address his complaint. Here, however, Plaintiff did not afford prison officials a fair opportunity to address any alleged misconduct by Defendant Cisco because no grievance named, described, or even alluded to anything that she did.

Finally, Plaintiff contends he submitted additional grievances that, in his view, would have exhausted his administrative remedies against Defendant Cisco. (Doc. 84, p. 7). Even taking Plaintiff's assertions as true, none of those grievances could have exhausted administrative remedies against Defendant Cisco. Plaintiff says he submitted these grievances directly to the ARB. As explained above, these grievances would have had to be submitted at the local level before they could be reviewed on the merits by the ARB. *See* 20 ILL. ADMIN. CODE § 504.810(a). Because Plaintiff admits he did not follow the

correct procedure in filing these grievances, they could not have exhausted his administrative remedies against Defendant Cisco.

### CONCLUSION

For the reasons outlined above, Defendant's Motion for Summary Judgment is **GRANTED**. (Doc. 48). Count 4 is **DISMISSED** as to Defendant Cisco. Because she was the last Defendant named in that Count, Count 4 is **DISMISSED** in its entirety.

**IT IS SO ORDERED.**

**DATED:  March 30, 2026.**

Gilbert C Sison

Digitally signed by Gilbert C Sison
Date: 2026.03.30 12:08:49 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**